IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NOBLE CAPITAL TEXAS REAL | § | No. 1:22-cv-652 |
| ESTATE INCOME FUND LP, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| JADON NEWMAN, CHRIS | § | |
| RAGLAND, ROMNEY NAVARRO, | § | |
| GRADY COLLINS, JADON | § | |
| NEWMAN (AS TRUSTEE FOR JFN | § | |
| GRANTOR TRUST), HANNAH | § | |
| HEERLEIN (AS TRUSTEE FOR | § | |
| N.A. NEWMAN HERITAGE TRUST), | § | |
| HANNAH HEERLEIN (AS TRUSTEE | § | |
| FOR K.A. NEWMAN HERITAGE | § | |
| TRUST), RAGLAND HOLDINGS, | § | |
| LLC, NOBLE CAPITAL FUND | § | |
| MANAGEMENT, LLC, NOBLE | § | |
| CAPITAL PROPERTIES, LLC, | § | |
| NOBLE CAPITAL SERVCING, | § | |
| LLC, NOBLE CAPITAL REAL | § | |
| ESTATE, LLC (F/K/A EMERGE | § | |
| REAL ESTATE GROUP, LLC), | § | |
| STREAMLINE FUNDING GROUP, | § | |
| LLC, NOBLE CAPITAL REO, LLC, | § | |
| NOBLE CAPITAL INCOME FUND II, | § | |
| LLC, NOBLE CAPITAL INCOME | § | |
| FUND III, LLC, AND DOES 1–50, | § | |
| Defendants. | § | |

<u>ORDER: (1) ADOPTING REPORT AND RECOMMENDATION OF THE</u>
<u>MAGISTRATE JUDGE; AND (2) PARTIALLY GRANTING DEFENDANTS'</u>
<u>MOTION TO DISMISS</u>

Before the Court is a Report and Recommendation   ) (Dkt. # 24)
submitted by United States Magistrate Judge Mark Lane.  The Court finds this
matter suitable for disposition without a hearing.  After reviewing the Report, the
Court **ADOPTS** Judge Lane's recommendation, and **Defendants'** Motion to
Dismiss is **GRANTED** in part and **DENIED** in part.

<u>BACKGROUND</u>

Plaintiff Noble Capital Texas Real Estate Income Fund LP ("the
Fund") was created in 2017 to maintain the assets of various individual investors.
(Dkt. # 16 at 5.)  The Fund, which managed approximately $24,000,000 in assets,
funded high-yield senior secured first-lien mortgages on residential real-estate.
(Dkt. # 16 at 9.)

Defendant Noble Capital Group, LLC ("Noble Capital Group") is a
limited liability company and a parent entity and sole owner of the other Noble
Capital subsidiaries named as Defendants in this lawsuit: Noble Capital Fund
Management, LLC ("NCFM"), Noble Capital Properties, LLC ("Noble Capital
Properties"), Noble Capital Servicing, LLC, Noble Capital Real Estate/Emerge
Real Estate Group, LLC, and Streamline Funding Group, LLC.  (Dkt. # 16 at 6.)

The Fund and Defendants' relationship is based on a series of contracts, including a Management Advisory Services Agreement ("MASA"). (Dkt # 16 at 10.)  Under the agreements, NCFM agreed to recruit limited partner investors into the Fund, while the Noble Capital Group entities agreed to recommend, originate, and manage real-estate loans for the Fund.  (Id.)

The Fund contends that Defendants Jadon Newman, Chris Ragland, Romney Navarro, and Grady Collins ("Individual Defendants") "used their Noble Capital enterprise to defraud the Fund out of substantial assets."  (Id.)  The Fund alleges that initially, Defendants used the Fund's CUSIP number, goodwill, name, and reputation to attract investors to the Fund.  (Dkt. # 16 at 22.)  Then, the Fund alleges that the Individual Defendants furnished false credit memorandum to induce the Fund to lend to risky borrowers, misrepresented the returns expected by the Fund to mislead investors and hurt the reputation of the Fund, refused to provide the Fund's independent auditor with access and documents, and eventually liquidated the Fund's assets away from the Fund into other investment vehicles owned and controlled by the Individual Defendants.  (Dkt #16 at 10–11.)  Based on these actions, the Fund now brings civil violation claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"), fraud, false advertising, unfair competition, breach of contract, conversion, breach of duty of good faith and fair dealing, and unjust enrichment.  (Dkt. # 16.)

The lawsuit is one of many legal actions arising out of the income fund.  See US Capital Global Investment Management LLC, et al v. Noble Capital Group, LLC, et al., 1:22-cv-626-DAE; Noble Cap. Fund Man. LLC et al. v. US Capital Global Investment Management LLC, et al., 1:20-cv-1247-DAE.  A motion to consolidate these cases is currently pending.

The Fund filed this action on July 5, 2022.  (Dkt # 1.)  Defendants originally moved to dismiss the case on August 2, 2022.  (Dkt. # 6.)  Judge Lane originally recommended that the then-presiding District Judge Lee Yeakel dismiss the case without prejudice.  (Dkt. # 13.)  Judge Yeakel adopted the Report in its entirety, dismissing the First Amended Complaint without prejudice.  (Dkt. # 14.)

The Fund filed its Second Amended Complaint on March 22, 2023. (Dkt. # 15.)  This version of the Second Amended Complaint did not comply with font or margin requirements, as the Complaint filed still included comments.  The next day, without the leave of Court or the consent of the opposing party, the Fund filed a new pleading, also styled as "Second Amended Complaint," which sought to remedy the pleading deficiencies.  (Dkt. # 16.)

Defendants filed a Motion to Dismiss the Second Amended Complaint on April 5, 2023.  (Dkt. # 18.)  On April 27, 2023, the case was reassigned to the undersigned.  (Dkt. # 21.)  The Fund filed a Response on May 3, 2023.  (Dkt. # 22.)  The Response also violated the Local Rules by exceeding the

page limitation and footnote font requirement.  L.R.  CV-7(d)(3); CV-10(a).

Defendants filed a reply on May 10, 2023.  (Dkt. # 23.)  Judge Lane issued his

Report and Recommendation on January 31, 2024.  (Dkt # 24.)  Defendants

objected to the Report on February 15, 2024.  (Dkt. # 25.)  Plaintiff filed a

Response to the objections on February 28, 2024.  (Dkt. # 26.)

## APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate

Judge's conclusions to which a party has specifically objected.  See 28 U.S.C.

§ 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made.").  The objections must specifically identify those findings or

recommendations that the party wishes to have the district court consider.

Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not consider

"[f]rivolous, conclusive, or general objections."  Battle v. U.S. Parole Comm'n,

834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de

novo review; the Court need only determine whether the Recommendation is

clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221

(5th Cir. 1989).

DISCUSSION

In his Report, Judge Lane found that the Fund failed to state a civil

RICO claim (Count 1), a civil RICO conspiracy claim (Count 2), a fraud claim

(Count 3), a conversion claim (Count 7–8), an unjust enrichment claim (Count 9),

a tortious interference claim (Count 10), an accounting claim (Count 11), a breach

of duty of good faith and fair dealing claim (Count 13), and a false advertising

claim against Income Fund I and Income Fund II.  (Dkt. # 24.)  Judge Lane also

found the Fund plausibly alleged a False Advertising claim against the Individual

Defendants, Noble Capital Group, and Noble Capital Fund Management (Count 4)

and three breach of contract claims, (Counts 5, 6, and 12), recommending that

these claims survive the pleading stage.  (Id.)

Defendants objected to the Report.  (Dkt. # 25.)  Defendants first

objected to Judge Lane's finding that the Fund has statutory standing to bring a

false advertising claim under the Lanham Act.  (Dkt. # 25 at 3.)  Defendants also

objected to Judge Lane's finding that the Fund stated a breach of contract claim in

Counts 5, 6, and 12.  (Dkt. # 25 at 11.)  The Court addresses each objection in turn.

I.      <u>False Advertising Claim (Count 4)</u>

Judge Lane found that the Fund sufficiently alleged standing to assert a false advertising Claim under the Lanham Act.  (Dkt. # 24 at 25.)  Defendants object to this finding, arguing specifically that the Fund lacks standing to bring a false advertising claim because the Fund does not (1) fall within the zone of interests protected by the Lanham Act and (2) the Fund was not proximately injured by Defendants' alleged violation of the statute.  (Dkt. # 25 at 7.)

a.      <u>"Zone of Interests" Test</u>

To bring a claim of false advertising under the Lanham Act, the plaintiff must first "fall within the zone of interest protected by" the Lanham Act. <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 130 (2014). "Identifying the interests protected by the Lanham Act, however, requires no guesswork, since the Act includes an 'unusual and extraordinary helpful detailed statement of the statute's purposes.'" <u>Id</u>. at 131 (internal quotations omitted). Relevant to false advertising, the Act explicitly states its goal to "protect persons engaged in [commerce within control of Congress] against unfair competition."  15 U.S.C. § 1127; <u>Id</u>.  The Supreme Court has interpreted this to mean that the plaintiff "must allege an injury to commercial interest in reputation *or* sales." <u>Lexmark</u>, 572 U.S. at 131–32.

The Fund alleges both loss of reputation and sales.  The Fund states that Defendants promised above-market (8.25%) returns to investors, without any disclosure of risk of loss.  (Dkt. # 4 at 10.)  The Fund was unable to uphold Defendants' promise and deliver these returns, allegedly due to Defendants' own actions, and thus the Fund suffered reputational harm.  (Id.)  The Fund further alleges that it lost investments because Defendants "use[d] the Fund's underperformance to besmirch the Fund and divert its investors into *other* Noble-controlled funds."  (Id.) (emphasis added).  The Fund states that the misrepresentations exposed the Fund to "consumer dissatisfaction, requests for refunds and disgorgement, competitive injury, and potentially other civil and regulatory liabilities."  (Id. at 26.)  These allegations sufficiently allege an injury to commercial interest through a loss of reputation and investments.

Defendants allege that the Fund lacks standing to bring this claim because the Fund is not a "competitor" of Defendants.  (Dkt. # 25 at 3.)  First, the Fund and Defendants may be construed as competitors.  According to the Fund's allegations, Defendants also established and managed competing Funds, known as "Income Fund II" and "Income Fund III."  (Dkt. # 4 at 21.)

Nevertheless, the Fund need not compete with Defendants to bring a claim under the Lanham Act, as articulated in Lexmark, 572 U.S. at 131–32.  Rather, the Fund only needs an injury to a "commercial interest."  Id.

Defendants then argue that the Fund cannot have a commercial interest because it does not "compete in the marketplace." (Dkt. # 25 at 4.) In support of this argument, Defendant cites ThermoLife Int'l LLC, 2019 WL 3840988, at *4. Yet the court in ThermoLife did not solely rely on the fact that plaintiff and defendant were not competitors when holding that plaintiff did not have standing. In fact, the Court stated that direct competition between Plaintiff and Defendant is only "strong proof that plaintiffs have a stake in the outcome of the suit [.]" ThermoLife Int'l LLC, 2019 WL 3840988, at *3. The court ultimately relied on many factors to decide that plaintiff did not have standing, including that the plaintiff did not allege facts pertaining to "lost sales data" and the lack of "any testimony or survey material exists that could demonstrate Defendant's alleged false advertising influenced customer choices." Id. at 4.

Defendants additionally contend that the Complaint contains facts that contradict an injury to the Fund's reputational harm. (Dkt. # 25 at 5.) This contradiction allegedly arises from the Fund's allegation that Defendants "freeride off the name, credentials, and goodwill of entities like the Fund without proper attribution." (Dkt. # 16 ¶ 33.) Defendants allege that the Fund cannot claim that Defendants took advantage of the goodwill of the Fund, while also claiming that Defendants hurt the Fund's reputation. (Id.)

The Court disagrees that these allegations are contradictory.  Perhaps Defendants used the Fund's success and accreditation to attract investors initially, but then eventually tarnished the reputation of the Fund.  The Court therefore does not find that this argument changes its conclusion that the Fund sufficiently alleged it fell within the zone of interests protected by the Lanham Act.

   b.  "Proximate Cause"

Defendants also argue that the Fund cannot meet the "proximate-cause requirement" for standing under the Lanham Act.  (Dkt. # 25 at 6.)

The Fund must allege that its injuries were proximately caused by violations of the statute.  Lexmark, 572 U.S. at 132.  The Fund alleges that Defendant falsely represented characteristics of the Fund, including the Fund's expected returns, causing consumers to look less favorably and divert investments from the Fund when those expectations were not met.  (Dkt. # 16 at 45–46.)

Defendants claim that the false advertising claim allegedly proximately injured investors, not the Fund.  (Dkt. # 25 at 6.)  However, the Supreme Court has stated that "the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute."  Lexmark, 572 U.S. at 132.  Rather, "injury flowing directly form the deception wrought by the defendant's advertising…occurs when deception of consumers causes them to *withhold trade* from the plaintiff."  Id. (emphasis added).  The Fund alleges

10

because of Defendants' alleged deception, investors withheld investments from the Fund.  The Fund's allegations are unlike when a plaintiff alleges "injuries to a *fellow commercial actor* that in turn affect the plaintiff."  See Lexmark, 572 U.S. at 132.  The Fund alleged reputational and commercial injuries to itself that directly flow from Defendants' allegedly false promises to investors. This is enough to meet the proximate-cause requirement.

Accordingly, upon de novo review, the Court will overrule this objection because the Court finds no error in Judge Lane's conclusion that the Fund sufficiently alleged a false advertising claim under the Lanham Act.

II.    Breach of Contract Claims (Counts 5, 6, and 12)

The Fund alleged three claims of breach of contract: two counts against NCFM for breach of the MASA, and one against NCFM for breach of the Memorandum of Understanding ("MOU").  (Dkt. # 16 at 46–49.)  Both parties agree that California law governs the contract.  Defendants allege that the Fund did not sufficiently allege breach of the MASA or the MOU so the Court should dismiss all three counts.  (Dkt. # 25 at 7–14.)

A. NCFM's Breach of the MASA (Count 5)

In Count 5, Plaintiff alleges that NCFM breached five provisions of the MASA.  Defendants argue that the Fund fails to allege sufficient facts to support breach of the MASA's provision.

11

To state a claim for breach of contract under California law, Plaintiff must plead: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff therefrom. Park v. Morgan Stanley & Co., No. 2:11-CV-9466-ODW, 2012 WL 589653, at *2 (C.D. Cal. Feb. 22, 2012) (citing Reichert v. Gen. Ins. Co. of Am., 68 Cal.2d 822, 830 (1968).

First, the Fund alleges that the MASA requires NCFM to "[c]onduct due diligence on prospective borrowers and investment opportunities in compliance with the credit criteria and underwriting guidelines specified in the Private Placement Memorandum." (Dkt. # 16 at 205.) The Fund relatedly alleges that NCFM was contractually required to "structure, securitize, document, and execute transactions based on due diligence findings," and it failed to do so. (Dkt. # 16 at 205.) The Fund says that NCFM breached this provision of the MASA by recommending loans to high-risk borrowers and not providing appropriate diligence findings. (Id.)

Because the Fund did not attach the Private Placement Memorandum to the Complaint, nor did it "describe the credit criteria and underwriting guidelines specific in the Private Placement Memorandum, and what conduct of omission by NCFM constituted breach thereof," Defendants argue that it is impossible to determine how NCFM breached the MASA. (Dkt. # 25 at 8.)

As Judge Lane and Defendants correctly point out, the failure to attach the contract is not fatal to the contract claim.  (Dkt. # 24 at 27–28.)  The Fund states NCFM did not conduct "due diligence" under the MASA, alleging specific instances where due diligence was allegedly lacking.  (See Dkt. # 16 at 16–18.)  NCFM allegedly told the Fund that the backgrounds of multiple borrowers "came back clean," when in reality, those borrowers had multiple foreclosures entered against them.  (Id.)  The Fund specifically names the parties, specifies what date NCFM told the Fund that they were "clean," and the number of foreclosures each borrower had on its record.  (See Dkt. # 16 at 16–18.)  The Fund alleges that NCFM provided false and/or highly misleading credit memorandum, and this was not "due diligence."  (Id.)

Defendants' objection revolves around the fact that the Fund fails to allege how its actions deviated from the credit criteria or the underwriting guidelines.  (Dkt. # 25 at 8.)

The Court finds that the Fund plausibly alleged a breach of contract claim under the MASA.  The Fund specifically details which of NCFM's actions it believes breached the MASA and show a lack of due diligence.  At a later stage, the Fund and NCFM may dispute whether NCFM conducted due diligence with respect to its recommended borrowers.  At this point in the litigation, the Fund has

specifically alleged which actions NCFM took that plausibly show a lack of due diligence.  This breach is thus sufficiently alleged.

Second, the Fund alleges that NCFM breached its agreement in the MASA to "repossess, restructure, or otherwise remedy properties or borrowers in events of default to preserve the principal."  (Dkt. # 16 at 47.)  The Fund states that NCFM breached this provision because it "failed to cause an appropriate Noble Capital entity to issue the required notes, security and cross-corporate guarantees, and interest payments called for in the MOUs."  (Id.)  Defendants object, contending that the MASA never stated that it was required to issue required notes, guarantees, and interest payments.  (Dkt. # 25 at 9.)

Again, the Fund alleges several specific instances where NCFM failed to repossess, restructure or otherwise remedy properties after events of default. (See Dkt. # 16 at 14–16.)  For example, the Fund alleges that "NCFM breached the MASA by converting a Fund property called, 'Herbert 6604', which Noble foreclosed on and transferred to Noble Capital Properties, LLC [], and refused to issue a new note to guarantee the principal debt of $102,600.00 owed to the Fund." (Id. at 14.)  The Fund goes into detail for similar instances.  (See Dkt. # 16 at 14– 16.)  For these reasons, the Fund again adequately alleged that NCFM breached the provision of the contract that required it to repossess, restructure or otherwise remedy properties after events of default.

Next, the Fund alleges that NCFM failed to "cause other Noble Capital entities to 'manage the portfolio of investments in respect to collateral monitoring, cash management, and any other activities'" as requested by the Fund, through its General Partner." (Dkt. # 16 at 47–48.)  The Fund states that NCFM breached this provision by failing to transmit principal and interest payments to the Fund – specifically by refusing to issue a new note for "Cedar 419, even though [the 4 Individual Defendants] indicated they were pursuing collection and foreclosure proceedings." (Id. at 36.)  NCFM argues its alleged failure to transmit payments, if true, is not sufficiently tied to the MASA requirement that the NCFM manage the portfolio of investments, citing Park v. Morgan Stanley & Co.  (Dkt. # 25 at 10); No. 2:11-CV-9466-ODW, 2012 WL 589653 (C.D. Cal. Feb. 22, 2012).

This case is not similar to Park.  There, the plaintiff failed to specify when and how Defendants contracted to perform a certain provision of the agreement and when and how the alleged breaching conduct occurred.  Here, the Fund points us to the exact provision it claims were breached and provides details about the alleged breaching conduct. (See Dkt. # 16, 36–38, 47–48.)  Also, by alleging that the 4 Individual Defendants "refused" to have any Noble owned entity issue a new note, it is implied, at least for stating a plausible claim, that the Fund requested a new note.  See Refuse, Merriam-Webster, https://www.merriam-

webster.com/dictionary/refuse (last accessed March 4, 2024) ("to express oneself

as unwilling to accept").  For this reason, the Fund sufficiently alleged breach.

Lastly, the Fund alleges that NCFM needed to "cooperate with the

Fund and the General Partner and keep the General Partner fully informed with

regard to the services provided by [NCFM] and its affiliates under this

Agreement." (Dkt. # 16 ¶ 209.)   The Fund alleges that NCFM breached this

provision because it failed to allow the Fund's auditors access to the information

they requested as part of their annual audit and ceased its monthly reporting on the

Fund's loan portfolio.  (Dkt # 16 at 36–40.)

Defendants argue that it could not have breached this provision

because there are no allegations that the General Partner ever asked NCFM to

perform such an act.  (Dkt. # 25 at 11.)  Defendants also allege that NCFM did not

provide "services," so it did not have the duty to keep the Fund fully informed in

relation to the audit.  (Id.)

The Court agrees with Judge Lane that the allegations again provide

enough information to state a plausible claim.  The Fund alleges that NCFM did

not produce documentation – despite being specifically requested – like

documentation "to support the $20,871,600.00 'carrying value' of the Fund's

capital allocated to the real estate loans that NCFM recommended," representing

85% of the Fund's net assets.  (Dkt. # 16 at 38.)  According to the Fund's

allegations, NCFM lacked cooperation with the Fund and the General Partner by withholding information that was crucial to its audit.  Therefore, this theory of breach of contract is also sufficiently plead.

In sum, the Court finds that the Fund sufficiently alleged a breach of contract claim against NCFM for breach of the MASA in Count 5.  Therefore, the Court will adopt Judge Lane's recommendation and denies Defendants' Motion to Dismiss Count 5.

B. NCFM's Breach of the MASA (Count 12)

The Fund brings another breach of contract claim against NCFM based on NCFM's "theft" of "$26 million dollars, the vast majority of Fund assets, without the knowledge and approval of the Fund of the GP, and contrary to its obligations under the MASA[.]"  (Dkt. # 16 at 54.)  The Fund alleges that NCFM violated the provision of the agreement that requires NCFM to "manage the portfolio of investments in respect to collateral monitoring, cash management, and any other activities as requested by the General Partner" and "to cooperate with the Fund and keep the G[eneral] P[artner] fully informed."  (Id.)

Defendants contend that the transfer of funds did not breach the MASA because NCFM has the explicit right under the MASA to direct opportunities to third-party sources and/or syndicate partners outside the Fund, as

long as the transfer is under $30 million.  (Dkt. # 25 at 12) (attaching and citing Section 4(c) of the MASA).

First, the MASA only states that NCFM "shall *limit* the direction of investment opportunities to third-party sources and/or syndicate partners outside the Fund to $30,000,000."  (Dkt. # 6, Ex. 3 at 2.)  This is unlike the clause in <u>Stach v. Amazon Servs. LLC</u>, which Defendants cite, because there, the clause explicitly said that Amazon had the "sole discretion" to take an action that Plaintiff alleged breached the contract.  No. CV 15-1468, 2015 WL 13283841, at *1 (C.D. Cal. Sept. 8, 2015).  Here, no such language appears in the MASA.  Instead, the MASA highlights the need for the NCFM to "cooperate with the Fund and the General Partner."  (<u>See</u> Dkt. # 6, Ex. 3 at 2.)

Even if NCFM had the right to direct opportunities outside the Fund, a transfer done during arbitration, that allegedly destroyed the Fund's value to benefit NCFM, plausibly shows a lack of "cooperation with the Fund."  NCFM still could have breached the MASA by not "cooperating" with the General Partner and keeping the General Partner "fully informed" when transferring the funds.

The Court finds that the Fund sufficiently pled a breach of contract action arising from the NCFM's unilateral transfer of $26 million.  (Dkt. # 16 at 54.)  Therefore, the Court adopts Judge Lane's recommendation and denies the Motion to Dismiss Count 12.

18

C.  Noble Capital Properties' Breach of the MOU (Count 6)

In Count 6, the Fund contends that Noble Capital Properties breached the MOU by failing to issue new notes for any of the MOU properties at any time despite the Fund's requests, failing to issue a cross corporate guarantee and security agreement in favor of the Fund by September 1, 2017, and by failing to pay $41,337.29 in interest.  (Id. at 48–49.)  The Fund then states that it "has been damaged due to loss of assets and property in an amount which will be proven at trial."  (Id. at 49.)

Defendant contends that the Fund failed to properly plead damages by alleging that its damages were vaguely "loss of assets and property."  (Dkt. # 25 at 13.)

The Court finds that the Fund plausibly alleged damages.  While "vague and conclusory allegations regarding damages are insufficient to survive a motion to dismiss," the Fund alleges damages outside the sentence that simply states it suffered "loss of assets and property."  Burns v. HSBC Bank, No. EDCV 12-1748 JGB, 2013 WL 12136377, at *5 (C.D. Cal. Aug. 26, 2013); (Dkt. # 16 at 49.)

Under the MOU, Noble Capital Properties "assumed the role of Borrower and took responsibility for covering the interest payable for four foreclosed properties" ("MOU properties").  (Dkt. # 16 at 34.)   First, the Fund

19

states that Noble Capital Properties is delinquent on $41,337.29 interest owed under the MOUs.  (Dkt. # 16 at 35.)  This is a clear statement of the damages it suffered from the breach of the agreement.

Further, in the Background section of the Complaint, the Fund alleges that, because of the lack of a new notes on the MOU properties, the Fund "may be forced to account" for those properties "as a total loss."  (Id. at 36.)  For example, the Fund then states that the principal balance on one MOU Property, Herbert 6604, is $102,6000, but may have to be accounted as a total loss.  (Id.)  Similarly, the Fund states the status of other MOU properties, the principal balance of those properties, and the refusal of the Noble entities for issuing a new note for those properties.  (Id. at 35–36.)  Therefore, the Fund sufficiently alleges damages it incurred by Noble Capital Properties' alleged breach of the MOU.

III.   The Remaining Counts

Judge Lane recommended that the Court dismiss the Fund's fraud-based claims (Counts 1, 2, and 3), the conversion claim (Counts 7 and 8), unjust enrichment (Count 9), the tortious interference claim (Count 10), the accounting claim (Count 11), the breach of duty of good faith and fair dealing claim (count 13), and part of the false advertising claim (count 4).  The Fund did not object to those findings. The court therefore reviews those findings in the report for clear error.  See United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

After careful consideration, the Court finds that Judge Lane's conclusions are neither clearly erroneous nor contrary to law.  Therefore, the Court adopts Judge Lane's recommendations and dismisses the above-stated counts.

IV.  Failure to Comply with Local Rules

Judge Lane made the Court aware of the Fund's repeated failure to adhere to the local rules.  (Dkt. # 25 at 30–31.)  Because of the number of violations of the Local Rules by the Fund, the Court agrees with Judge Lane's recommendation that future pleadings that fail to comply with the Local Rules shall be stricken.

CONCLUSION

For these reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. # 18.)

Accordingly, the following claims shall be **DISMISSED WITH PREJUDICE**: the Fund's fraud-based claims (Counts 1-3), a conversion claim (Count 7-8), an unjust enrichment claim (Count 9), a tortious interference claim (Count 10), an accounting claim (Count 11), a breach of duty of good faith and fair dealing claim (Count 13), and a false advertising claim as it pertains to Income I and Income Fund II.  (Dkt. # 24.)

As to the following claims, the Motion to Dismiss is **DENIED**: the

21

false advertising claim against the Individual Defendants, Noble Capital Group, and Noble Capital Fund Management only, the breach of contract claims against NCFM (Count 5 and Count 12), and the breach of contract claim against Noble Capital Properties (Count 6).

Any further pleadings that do not comply with the Local Rules will be **summarily stricken**.

**IT IS SO ORDERED.**

**DATE:** Austin, Texas, March 7, 2024

_____

David Alan Ezra
Senior United States District Judge